51083, United States v. Minor. Mr. Hennessy. Thank you, Chief Judge Richman. Good morning. This case presents a narrow but important issue. Does the definition of controlled substance use in the career offender enhancement incorporate the federal drug schedules in effect at the time of sentencing or at the time of the defendant's prior conviction? Has the Supreme Court granted cert on this issue? They have not, Judge Duncan. A cert petition is pending in the Third Circuit's decision in Lewis, but this particular issue has not had cert. I thought I read in one of the briefs that Jackson from the Eighth Circuit had not been granted in that case? There's a Jackson case from the Eleventh Circuit involving the ACCA. It's a similar timing issue as the issue here, but it will not definitively decide. So the circuit split, current circuit split on time of conviction versus time of sentencing has not been granted by the Supreme Court? I think there are two similar issues under two different regimes. The ACCA issue has been granted cert, but our issue here under the career offender guideline in the sentencing guidelines, that has not been granted. Okay. All right. I'm glad I asked because I thought we would just be waiting for the Supreme Court to resolve the issue. So there's an existing circuit split on time of sentencing versus time of conviction on this issue, career offender. But there's pending cert petitions, but SCOTUS hasn't granted one of them? That's right. Okay. There's a three, three circuit split on the issue that we have here, but I think to paint a little fuller picture of that circuit split, there's an underlying circuit split there. And that's whether we can define controlled substance by looking to federal and state law, or whether we define it by just looking to federal law alone. And on that particular issue, this court has taken a position in Gomez-Alvarez. This court has said, we look to only the controlled substances under the guidelines. And on that, on our circuit split, on our timing issue here, every single circuit that defines controlled substance in the same way has adopted a time of instant offense rule. They look to the current version of the Controlled Substances Act. It's the circuits that have diverged from this circuit and said, you can look to either federal or state law that have adopted the government's time of prior convictions. And a time of sentencing rule makes sense because it's consistent with the plain text of the guidelines. What text are you talking about? Both the Sentencing Reform Act and the guidelines. If you could just point me to the text. So I know, because you make a plain language argument. That's, as I understand it, that's your principal argument. We have to follow the plain language. Fine. That's a good principle. So what is the language that we have to follow? In both the Sentencing Reform Act and the guidelines, 18 U.S.C. 3553A4A2 and Guidelines Section 1B1.11a instructs courts to apply the guidelines in effect at the time of sentence. Well, sure. But 4B1.1, the Career Offender Guideline, which is what I least two prior felony convictions of either a crime of violence or a controlled substance offense. So the plain language there points me back in time to a prior conviction of a controlled substance offense. So why doesn't that mean the plain language mean that we look at the time of the conviction, the prior conviction? What was the controlled substance offense at that time? So I think there are two discrete issues going on, and it relates to how this court applies a categorical approach. At step one, we need to look at what was the prior offense. And we agree that that is a backward looking analysis. Well, you know, the fact of conviction, the elements of that conviction, what the punishment was for that offense, those are certainly all backward looking. But that plain language says nothing about what the current legal significance of those prior convictions. So let me see if I understand your argument. I understand the categorical approach here. So let's say at some point the controlled substance definition was changed such that the crime now excludes marijuana, now excludes hemp. So that's this case. So let's say that you have two defendants who are arrested at the same time for doing the same crime, and they have exactly the same three prior drug offenses in their past. And let's say further that the definition, the federal definition, was when it was effective November 1, 2018. So one of those defendants is sentenced on Halloween, October 31, 2018. And so under your argument, I think that person would be a career offender. Now, the second defendant, just by pure happenstance, is sentenced on All Souls Day, November 2. All right. Two days after Halloween. And he is, by your argument, not a career offender. So the first one, the Halloween guy, is a career offender, and he gets the enhancement. The All Souls guy, he's not. Is that right? Is that what the law is, in your view? That's right. And I think that is a natural consequence of applying the guidelines at the time of sentencing. But you see my point, though, that I hope the sentencing, when the sentencing occurred, is arbitrary, almost. It's pure happenstance. I agree, Judge Duncan, that it is arbitrary. But there's always going to be sentencing disparities when the law changes. And so Congress has very clearly set out the time of sentencing is the place that we look at. No, Congress has not set that out. That's what we're trying to determine, what the implications are of reading the guidelines. And I'm just saying that that consequence of your argument, and I understand you won on this argument in at least three circuits. And so there's nothing wrong with making this argument. I'm just saying the consequences of that argument that I just pointed out, to me, are intolerable and would be a reason not to adopt the time of sentencing principle. But, Judge Duncan, any time the guidelines themselves are amended, it's just a natural consequence that the person that's sentenced the day before the amendment is sentenced under the prior version of the guidelines, and the person sentenced — Well, and the district court still has authority to not follow the up and down, right? Yeah, absolutely. This doesn't change that. Absolutely, Judge Haynes. The career offender enhancement is not the only tool we have for dealing with recidivists. You can consider the whole record. These convictions still counted towards my client's criminal history. And so the district court, as long as they're within the statute's lowest and highest, minimum and maximum, can go towards Halloween or All Saints Day with the person based on their past, as long as they do so, you know, properly and whatever. But, I mean, in other words, the notion that, oh, my heck, just because I heard this on October 31, I had to give this guy more, that isn't the case, right, in this circumstance. Right. And I think, you know, if there are — It is in ACCA, but not here. Yeah, we're dealing within minimum and maximum sentencing ranges under the guidelines, not under — not changing the maximum. So let me just get this straight. The Halloween sentenced guy is a career offender under the ACCA, under the time of sentencing approach. The All Souls Day guy is not a career offender. That is a significant difference, correct? It's absolutely — And you are not arguing that there is — even if there were error here, it's harmless error. You're saying that a failure to — the putting the defendant as a career offender, you're not saying that that was harmless error, right? You resist that conclusion. Right. So it mattered. Yeah, absolutely. Oh, I'm not saying it doesn't matter. I mean, guidelines matter, and the Supreme Court has made that clear. But it is also true that the district court can alter from it. So, I mean, I was just addressing, is this notion of Halloween and All Saints necessarily always going to happen, or can the — could the judge say, well, because this is about to change, I'm going to look at it differently? I think that's absolutely true. I think, I'm sure if the guidelines are about to change that the defendant sentenced on Halloween, hopefully his, you know, defense attorney will say, you know, there's this big change coming up. We ask you to consider it and vary — What is the difference in the range between an AC — a career offender sentenced and a non-career offender? In this case, it was huge. It more than doubled a minor's range. So if the district court on Halloween said, you know, the — I like the time of sentencing approach, and this co-defendant is going to be sentenced on All Souls Day, and he's not going to be a career offender, I don't think that's fair. So I'm going to sentence this person outside the range that would normally apply to a career offender, totally outside. That would not be reversible error? I guess, are we talking about procedural reversible error in calculating the guidelines or a substantive reasonableness? Reversible error, where you commit procedural error by refusing to sentence him within the career offender enhancement. I don't know if I'm — Okay, maybe I'm not — I'm sorry, I'm not quite — I'm not asking it well. I'm intrigued by the idea that even though somebody is a career offender, the district court could vary downward from that and sort of solve the problem of inequity between the two persons who are being sentenced? That's the district court's responsibility in every case, is to calculate the guidelines and then look at all of the factors and determine what an appropriate sentence is in that particular case. And if they think that the defendant's criminal history is underrepresented or overrepresented, they can vary on that basis. But these kind of — these kind of disparities are just always going to happen when the sentencing guidelines are amended. If you follow the time of sentencing view, which three circuits have rejected? Right, but the government's view has its own disparity with state offenders who are convicted of marijuana offenses. If someone got convicted of Texas marijuana conviction on Halloween, and if another Texas defendant got convicted of marijuana on All Saints Day, All Souls Day, those two would be — those two would be treated differently. Under the government's time of conviction, we look to the federal comparator statute, so the one convicted on Halloween would count towards a career offender enhancement, and the one convicted on All Souls Day would not count. So I think, you know — I mean, this judge actually went below the career offender guideline. Absolutely. So it can be done. Why isn't this harmless error, then? Because there's no indication that if the judge had considered the actual right guideline range, that he would have imposed the same sentence. Okay, so the classifying the guy as a career offender, then, made enough difference to where you're resisting the conclusion that it was harmless error here. I think there are two separate issues. There are. There are two separate issues. There's a procedural issue on whether you have to calculate the guidelines range, and then there's substantive reasonableness. And there was a procedural error here that caused him to miscalculate the guideline range. We have no idea from the record as it exists what this all right, you know, 121 to 151, what am I going to sentence him to in this scenario? Maybe I'll just go top of the guidelines instead of very upwards. We just — we don't know that. That's a heavy burden. And for harmless error, the government has — you know, it's a rare case, and this is just simply not that rare a case. Yeah, I mean, if the district court said, even if I applied the other, the 121 to 151, I would still give the 180 months, that's when we say it's not a — I mean, it's not a problem because the procedural error is harmless. But when the judge does look at the guidelines and says, I'm going to go below these guidelines because they're too high, but doesn't say, but I want to go above the other guidelines because they're too low, then that doesn't tell us that the judge was not relying on the — I guess if you could just — my basic conceptual problem with the time of sentencing approach is that this career offender provision is obviously a recidivism provision. If the offender is a recidivist, he gets — he becomes — that's what a career offender is. He's a recidivist. So someone — so we're necessarily looking backwards and saying, have you been committing crimes in the past? Simple. And that's the — that's — so that not just suggests, that strongly implies that we look back to when he was convicted of these prior convictions and we look to the law at that time. So I have a couple things to say to that, Judge Duncan. The first is that even though it is unquestionably a recidivist provision, Congress and the Commission have laid out specific crimes that are sufficiently dangerous to warrant this kind of harsh sentencing. And so when the law changes and Congress determines that that conduct is no longer criminal or culpable or dangerous, then it makes sense that that kind of conduct doesn't count towards the recidivist. Yeah, but keep in mind the fiction that we're operating in. That's not what Congress has done. What Congress did is remove hemp from the definition. And nobody in their — nobody thinks that this case is about somebody who had hemp. We know that it wasn't, because the district court made findings about it. Well, it's a little unclear from the record, but, you know, A, it doesn't matter under the categorical approach, and B, the Supreme Court has recognized that the categorical approach is going to be under-inclusive, and this could be one of those cases. And I think, you know, in the recidiv — recidiv — is it all right if I answer? Well, it's fine with me, but you should ask. Is it okay if you — Yes. And in the, you know, recidivism enhancements are not meant to punish that prior conduct. They're meant to determine at the time of sentencing now, is this the kind of conduct that we need to impose substantial additional incarceration for? You said that the prior conviction would still matter for accounting for criminal history purposes? Yes, Chief Judge Richman. In this case — And what section of the guidelines do you rely on for that? I think it's subpart three that involves calculating criminal history. I don't know the exact — So it's an offense, it's a conviction for that purpose, but not for the other. Well, it's still a conviction. I think — so there's — again, there's two things at issue, and it's this historical facts and the current legal significance. And so the historical facts are locked in — I'm just trying to — Yeah. I haven't looked at that guideline provision. I'm just wondering what language in there that makes it different. That just looks to prior conviction, and it has — there's no categorical approach involved, there's no comparator federal statute that we have to look to to see if it qualifies. That's just a straight — does the defendant have prior convictions and — That's a — I mean, that's a very interesting question. And maybe on rebuttal, you could — if you can find it, it's okay if you can't. But if you could find the language that — in the guidelines that would make the prior conviction still count for criminal history points. I mean, that's — I haven't thought of that. Sorry. Thank you. May it please the Court. Ethan Sachs on behalf of the United States. The district court correctly applied the career offender enhancement under Section 4B1.1 of the But I'd like to start with where we just laid off, which is actually the text of 4A1.1, which is the section in which — the guidelines in which the court looks at the defendant's criminal history. And the text there instructs the court to add points for various previous offenses. And 4A1.1 — excuse me, 4A1.1 subsection A says add three points for each prior sentence of imprisonment exceeding one year and one month. Subsection B says prior sentence of imprisonment of at least 60 days. So, we think that is very telling because the guidelines there use very much the same language as they use in 4B1.1, which is the guideline specifically at issue in our case. And that's prior sentence of prior felony convictions. We think in both of those instances, that's a backward-looking question, as Judge Duncan mentioned before. Further along those lines, 4B1.2 — so, moving the other direction in the guidelines, but still right next door — defines prior felony convictions. And it does so sort of itself looking backwards. And it says that term means the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of controlled substance offenses. So, we think together those three textual points are irrefutable that the inquiry here is backward-looking, which of course, as we've been discussing today, makes sense that this is a recidivist enhancement. And what the court is doing in sentencing the defendant and analyzing whether the career enhancement applies is looking backward. That's by definition what a recidivist is. What is your response to the argument that in this circuit, we tether the definition of controlled substance offense to the federal definition, whereas other circuits have not, and that explains the divergence? So, I think what that issue really comes to play in Lewis, which is the Third Circuit decision, which takes a time of conviction holding. And what it says there is it's distinguishing its decision in Lewis from the Third Circuit's decision in Brown, which is the ACCA context in which it applied a time of sentencing rule. And it's distinguishing the ACCA from the guidelines that the ACCA has an explicit cross-reference to the Controlled Substances Act. And the court says, Judge Hardiman's unanimous opinion said, in that context, it may make sense to look at whether the It is true that this court has looked to the Controlled Substances Act to define, we're not denying that in the past, but it's very different when the text of the Armed Career Criminal Act explicitly cross-references the Controlled Substances Act versus the guidelines, which does not. In fact, it later says state or felony conviction. It doesn't tie it to the Controlled Substances Act. Please. Have you conceded that when the hemp was taken out of the Controlled Substances Act that covered marijuana, that that is no longer, we can't parse out between hemp versus, is that a means versus an elements issue or what? So we are, we acknowledge that because this court, and as all courts, the Supreme Court is applying the categorical approach that if today, or that if we knew the defendant's convictions post-2018 were for convictions involving hemp, or if they occurred today, excuse me, if they occurred today, that hemp is no longer a controlled substance. We are not denying that, but we think that the inquiry is backward looking. And at the time of conviction, no one disputes here that in 2000, in which Mr. Miner was involved in marijuana with intent to distribute, in 2010, when he was convicted of importing marijuana, that at those times, both hemp and marijuana were controlled substances. I think you're missing my point. Okay. Assuming we look at controlled substances as defined today. Yes. And does that mean looking back that the statute of conviction is categorically not a means versus elements? Hemp versus marijuana is elements versus means. You see what I'm saying? I'm not sure I do. I apologize. Maybe, is it possible to ask it another way? Is there open to us to consider a modified categorical approach with respect to . . . It's very straightforward way. In other words, because I thought there were findings in this case that there was no hemp involved. There are findings, I think. The district court says it explicitly. In fact, the district court was presiding and sentenced Mr. Miner in 2010 for his importation conviction. Yes, there was a finding that all three prior convictions were for marijuana and not for hemp. Yeah, but the Chief Judge's question, and I don't know the answer to that, is whether it would be open to a modified categorical approach. What's your position? Did you take a position? We have not taken a position. Are you taking a position today? And if so, I'd sure like to hear it. We don't have a position on that question. You don't realize how many convictions this affects. We do. We think that under either approach, the reason we haven't gone further is that in this case, there's no need to go further to . . . Well, three circuits have disagreed. So why isn't the government taking a position? That a prior . . . That the statute of conviction can be parsed such that the modified categorical approach can be applied. And we can look back and see if the conviction was for hemp or marijuana. Well, we think that Taylor, the Supreme Court's recent decision in Taylor, precludes us from doing that with federal predicates. And Mr. Minor's predicates here were all federal offenses. We think Taylor leaves open the door for whether that's possible for state predicates. And so we haven't taken . . . I apologize if I misunderstood Your Honor's question. Our view is that for federal predicate offenses, that is no longer possible. But for state predicate offenses, that may be possible in light of Taylor. That's why we haven't taken a position in this case, because Mr. Minor's predicates were all federal convictions. I apologize for . . . And you are not challenging that the district court was authorized to exercise discretion and go below the career offender guidelines? No, we're not denying that. This isn't like the ACCA that's required. This is something that is discretionary. Although important, I'm not saying guidelines aren't important. They're very important. But when it's just the guidelines, the district court can go above and below as long as the district court doesn't go below the minimum or above the maximum, right? Yes, Your Honor. We're not denying that that is true. I would say, though, that it's not just the text of the guidelines that we think that would run counter to, but it's also, as we've been discussing today, the real purpose of this guideline. You can find that in the commentary to the guideline itself. 4B1.1's commentary emphasizes that the point, and it is, we think, obvious, that a career offender enhancement is to impose substantial sentences on repeat offenders, on recidivist offenders, people who continuously violate the drug laws in place at the time. And that is what the career offender enhancement was meant to be. I mean, to flip it from what we have here, had this been somebody sentenced after a 2018 conviction, let's say down the road, because I realize those are long sentences, but the court could say, well, I realize that's no longer considered marijuana because of the potential of hemp or whatever, but you have just committed too many crimes. I'm going to go up. So here again, had the guidelines been the 121 to 151, the district court absolutely could have gone to 180 or 262 or whatever, again, as long as it doesn't go over the maximum sentencing under the statute, right? Yes, we acknowledge that that is true. So, I mean, this notion of addressing your past, while I think it's important what's in the guidelines, I'm not taking away from that, also is for the district court to analyze that more deeply. Sometimes the conviction someone had was a little bit flaky, if you will. Sometimes it's not part of the guidelines because it was so long ago, but it shows that this person didn't learn from that and so on and so forth. So the district court has to look at, I've actually sat as a district judge briefly and done some sentencing and it is quite a variety of things you have to look at, again, within the taking a look hard at the guidelines, but not being bound by them. Yes, yes, Your Honor. And our argument is not that the district court is bound to issue a decision within the- No, I was just addressing sort of the question- Sure, sure. I would just say one thing in response that if I would, the commentary, as I mentioned to the guidelines, makes clear that 4B1.1 comes from Congress's mandate. In section 994 of Title 28 of the U.S. Code, it says Congress mandates the commission to assure that certain career offenders receive a sentence of imprisonment at or near the maximum term authorized. And we think it would just flout Congress's intent there in instructing and mandating the Sentencing Commission to create 4B1.1 to have this career offender enhancement to just say, well, in some cases, it'd be possible that it didn't apply. We think it's clear that in cases like this, that is what Congress intended and that's what the Sentencing Commission intended with the language it chose. If the time of sentencing approach is the right one, which some circuits have said, but we have not, what is the meaning of the word prior, prior, P-R-I-O-R, prior in 4B1.1A3? What meaning does it have? I do not have an answer to Your Honor. That is part of why we think it must be a backward-looking- I mean, prior felony convictions, but at the time, we couldn't know because maybe at the time of sentencing, the definition of controlled substance offense will have changed. So prior, I'm not sure what it means. It doesn't say prior acts. It says prior felony convictions. We absolutely agree with that. We think that prior, and if there were any doubt based on the textual provisions that I mentioned before, which I think control, we think McNeil, the Supreme Court decision, which is most on point, although we acknowledge that involved the ACCA and this involves the guidelines. The language, the Third Circuit and the Sixth Circuit, in unanimous opinions issued recently, have said that the questions there in McNeil is remarkably similar to the question here. And what the text in McNeil was really about was the court interpreting the provision of the ACCA that says three previous convictions for a serious drug offense. And what the Supreme Court said unanimously was that that is backward-looking language and that the only way to answer that question was to consult the law that applied at the time. Yeah, but under your approach, if the district court remembered, oh, yeah, I remember this was a hemp case. Back then, you would be convicted of marijuana. I remember that. But, oh, I remember it was a hemp case. Under your analysis, it still would be a career offender guideline. We think the time at which Mr. Miner was convicted. So the fact that Congress has said, oh, my heck, we shouldn't have hemp in there. Um, that's irrelevant because this guy was convicted back then. So the fact that the judge knew it wasn't hemp back then, if he had known it was, if the district judge had known it was hemp, it still wouldn't have helped your analysis. Yes, we think that because hemp and marijuana were both clearly controlled substances at the time. We don't think it's remarkable that they would be treated as such. Can I ask you what you're doing with Davis convictions? I'm sorry? What are you doing with Davis convictions, where they were sentenced, where they were convicted under the residual, the residual clause? I'm sorry, I don't have that. You have a prior conviction that was, it wasn't an element of a violent crime. Right. It was the residual clause. Right. And so what are you doing in those? How are you counting those prior convictions? Uh, I'm, I'm, I'm not familiar with that,  I'm, I'm, I'd be happy to file a letter following up. I'd like to know that too. Okay. I'd be happy to file something. I'm just not aware of that. What's the government doing in those cases? I'm just not, I'm not aware. I'm happy to, I'm not trying to hide it. But you see the issue. I, I do. I appreciate the question. I'm not trying to avoid the answer. I'm just, I'm not aware. I don't want to tell you the wrong thing. Yeah. I mean, just thinking off the top of my head, I would think that the, the, that decision has been recognized as retroactive on collateral review. That's correct. And so therefore you could file a subsequent 22, 2255. Yes, that's correct. I don't think the same has been done in this context. Maybe the chief is asking. Some cases have held, our circuit has held that a guilty plea. Oh, right, right. Count that you can't wipe that off the book. So what do you do with those people? How do you count those convictions? I understand the question. I just don't have the answer for me. I'm happy to follow up with the court. Yeah. And just to get back to the text of 4B1.1, it says two prior felony convictions. Yes. So what is the meaning of the word conviction? If the time of sentencing approach is the correct one. It would be hard for me again to understand. I think it's the time. It has to be the time of prior conviction for that term. I mean, the conviction happened in the past. That's correct. So it doesn't make any sense to say he doesn't have a prior felony conviction in the past because something changed after that. We agree with that completely. Yeah, I just don't get that. One point I just want to make in terms of the purpose and perhaps an analogy might be helpful. And that is the laws of our country have changed before.  But in prohibition times, selling alcohol was prohibited. Following the change in the law, we took a different view on that. But that doesn't mean that someone who sold alcohol during prohibition is not a bootlegger. It's really the same principle at issue here. It's that marijuana and hemp in 2000 and 2010 when Mr. Minor were convicted were controlled substance offenses. He was convicted of them. So they're therefore prior felony convictions. And we think that really answers the case. If there was any more question, you could look to Supreme Court precedent or the purpose of the guidelines, which we think both align with that. But we think the text resolves it. I mean, the reason there is a career offender provision is because we're interested in people who are like to break the law. They have a problem with breaking the law. And so they show a propensity to break the law. And by definition, that means the law in effect at the time. As you said, there's still bootleggers. Correct. Even after the 21st Amendment. Correct. And we think the commentary to 4B1.1 makes that point very clear. And it's the Supreme Court and this court have said that the purpose of the career offender guideline is to look and to give substantial penalties for repeat offenders. And repeat offenders were violated in the law, of course, at the time of their convictions. Let me ask you this. Let's suppose there was a guideline, a career offender guideline that included burglary and then it was amended to take burglary out. What would we do under those circumstances? He has a clear conviction for burglary in the past. I think the law . . . I don't have a definitive answer on that question. I haven't thought about it before. But my thinking is that the logic would still be the same here. The enumerated offense on October 31, it would be you would get a career offender guideline as soon as for that. November 1, you would not because it's no longer an enumerated offense under the career guideline or career offender guideline. And in this hypothetical, the defendant was convicted and committed the offense at the earlier point. You're applying the guideline provision in effect at the time. Right. But we think that if the defendant committed burglary and burglary was counted as one of those offenses. So, okay. You're saying for every other section, we apply the guidelines in effect at the time. But for career offender, we don't apply the guidelines. Respectfully, no, Your Honor. We think we agree that we apply the guideline in effect at the time of sentencing. There's no denying that. But we think that means . . . What that does mean is that 4B1.1 should be applied by the district court as that guideline existed on the day of sentencing. But that doesn't . . . We better keep a lot of old books in our office. Let me ask you this. Do you think that the case that the Supreme Court took on the ACCA will answer this question for this? We think it very likely could. The reasoning there could certainly affect the reasoning. Should we obey this case until that comes out? Yeah, we requested . . . I know you requested that and you didn't, but now are you . . . We think that would be appropriate and make sense because we think, although the issues are distinct legal questions, we think because there is so much overlap in the reasoning that . . . How far down the road is Mr. Minor in his sentence? I believe . . . He's going to get a sentence regardless of how we rule on this. I mean, he's still committed a crime now and, I mean, there's still a sentence. So I'm just wondering if we put this in abeyance, does it . . . I believe he received in 180 months. So I'd have to do the math. Right, but what I'm . . . But if he should have received something between 121 and 151, I don't think we're close to that. I don't believe so. I don't . . . We don't think he should have received . . . Sometimes we have cases that it would matter . . . Understood, but we don't think that is . . . And I don't think this one does because . . . I agree with you. I see no reason that that wouldn't . . . He would likely have gotten at least 10 years is what I'm saying, even under the old guideline. We think so. Under the other guideline, not old. Yes, although we think the . . . New, I guess, in his view. Sure. Thank you, Your Honors. So why shouldn't we put this case under abeyance for the ACCA case? If the court wants to, I think that'd be okay. I think the ACCA case, what is going to happen there is they might give some guidance on McNeil, and that might be the most relevant thing that happens. The overwhelming majority of this court's sister circuits that have considered McNeil said that it just . . . it doesn't apply to this issue. It didn't consider this issue, and the ACCA case may take a while, but if the court is inclined to do that . . . But like I said, that's not going to really change how long your client is in prison because even under the guideline you would have preferred, that's still 10 years, and I don't think he's been there 10 years, right? Right. Under this . . . Conviction, okay. I wanted to start quick with Chief Judge Richmond's hypothetical about burglary, and it's not really a hypothetical because it happened in 2016 with Amendment 798. The commission removed burglary from the definition of crime of violence triggering the career offender guideline, and I'm not aware of any court that has said that a pre-2016 burglary still counts even for sentencing after 2016. You apply the guidelines in effect at the time of sentence, and with regard to controlled substance itself, it would be exceedingly odd if courts had to apply the guidelines at the time of sentencing, but they didn't use the current definition of a term that is contained in those guidelines. So the most natural reading to give effect to Congress's intent is to look to the CSA at the time of sentencing, which reflects current and updated medical knowledge, scientific knowledge. And finally, the government mentioned Congress's intent here, and the time of sentencing rule gives effect to Congress's intent to change the law, and it gives . . . effectuates Congress's instruction to apply the guidelines at the time. In your argument, I mean, the point of career offender is someone, you know, is recidivism and all that, but not of everyone. Not of everyone who's committed a crime, and so we still have to decide what is that crime, and if it includes . . . if it's overbroad, it's not the crime that goes in the career offender. I mean, that's what you're saying, right? Exactly. So it's not so much, like, now we're suddenly not allowing the career offender. It's that you still have to figure out, is someone a career offender? Not just did they commit other crimes, but did they commit the crimes in that bucket? Absolutely, Judge Haynes, and that's the burglary example. It's not enough that they just committed burglary at some time in the past. We need to go to the statute or the guideline at issue when they're sentenced and say, does this qualify? Then on that view, what is the meaning of the word prior in 4B1.1? It means a conviction that happened. A conviction that happened for what? At that time, it was a controlled substance offense. We have, you know, again, it's like . . . It doesn't say that. It doesn't say a conviction for what at that time was a controlled substance offense, but today isn't. It just says two prior felony convictions of a controlled substance offense. Yeah, and if controlled substance offense and controlled substance at most is undefined, then we should use the fundamental principle that's baked into the guidelines. What is the word prior? So we could erase the word prior and it would mean the same thing. The conviction would still be there. It just no longer meets the statutory requirements or the guidelines requirements. Those are two different analyses. The categorical approach, you have to take the prior conviction, determine what it is, what are the elements. We're not disputing the elements. We're not disputing the fact of conviction. We're not disputing the length of any sentence, but then you have to go and take the federal comparator statute and say, do these line up? And so it's not . . . Do you think that's consistent with giving the man additional criminal points, criminal history points for the same act? Yeah, because the criminal history does not involve the categorical approach. It's just, does he have a prior conviction? There's no current definition to apply to. Exactly like a 2015 burglary would still apply to criminal history score, but if we were sentencing someone today under the career offender, that 2015 burglar would no longer apply as a career offender predicate. So one can match one, but not the other under our intent. So I want to end by just saying that the government's time of prior conviction rule leads to a little bit of two ideas. It's that conduct that Congress has determined is no longer dangerous would count, but there's also the inverse of that, and that in some circumstances, convictions that Congress has determined are dangerous would not count. And in a lot of cases, the states will beat the federal government to the punch in controlling a substance, and we saw that with the so-called date rape drug, or recently with this designer drug called bath salts. That doesn't create an ex post facto problem. Someone is convicted of something at point A, and then at point B, the laws change to make that act more serious, and we're going to consider the person a career offender now? That's not an ex post facto problem? No, because the ex post facto, and this is assuming that the law changes before the incident affects, that might create some ex post facto issues under Q, the Supreme Court's decision. But this comes back to the point that recidivist enhancements are not punishment for the prior crime. We're looking at how serious the conduct is now. What are they then? If they're not some enhanced punishment for prior crimes, what is a recidivist provision? They are, but this enhancement is based on how problematic is this conduct now that we think that this person is entitled to substantial additional incarceration? And when Congress has said that the underlying conduct is no longer culpable and no longer dangerous, then it should not apply for purposes of the enhancement. So we ask the court to vacate minor sentence and remand from the sentence. Thank you. Thank you, counsel.